Brinkerhoee, J.
In the court below the defendant in error-brought his action against the plaintiff in error, and in his petition alleges, in substance, that he is the owner of a tract of land in said county, and in the petition described; and that the defendant below is the owner of another tract, near to but not adjoining-the same; that on the tract of the defendant below there was “ a low marshy sink or pond, usually filled with a large quantity of water, which, before the committing of the grivances ” afterward' therein complained of, “ ran in a northwesterly course, away from, and not upon, the lands of the plaintiff ” below. And that the defendant below had wrongfully dug a ditch, upon his own land, by means of which large quantities of water were caused to flow out of said marsh, sink, and pond, “ in a contrary direction to its usual natural flow and course,” upon the lands of the plaintiff below, to his great damage, etc., for which he prays judgment.
■ The answer of the defendant below amounts to a general and-special denial of the material allegations of the petition.
At the January term, 1863, the case was tried to a jury, and-verdict rendered for the plaintiff below. On the trial a bill of exceptions was taken, and is as follows :
“Be it remembered, that on the trial of this in the court of' *309 ■common pleas within and for the county of Lorain, and State of ■Ohio, at the January term thereof, 1863, evidence had been given, tending to show that upon the land of the defendant, which was near to but not adjoining the lands of the plaintiff, there was a ■low, wet, and swampy marsh or basin, which extended over and •covered some five or six acres of land, and upon which, at certain seasons of the year, water stood to a great depth, and it at other times stood to the depth of from on^ to six inches, until it passed -off through its natural outlet, or till it evaporated away and passed ■off by percolation through the soil; that the natural outlets would not, of themselves, take all of the water off from said low, wet, •marshy piece of land or-basin, but that a portion ^thereof, from one to six inches deep over said tract, would remain thereon .and pass off by evaporation and percolation through the soil; /that on the north side of this wet piece of land or basin, there is a small ridge, across which, through a settle or sog, swale, or outlet, ■the water which accumulated on said low, wet piece of land or basin, passed off in a northwesterly direction, over the surface, across the lower end of defendant’s land, on to the land of one Mathias Diedrick, and from thence on to the land of the plaintiff; ■that the water also, in very high times, broke out of said basin and passed in a northeasterly direction around the end of said ridge, and thence came back upon the land of the defendant, and passed off, over the surface, in a northwesterly direction, as aforesaid, on to the land of the said Mathias Diedrick, and across the land of the plaintiff; that the general surface drainage of several hundred acres of land, including that of the defendant, was in a northwesterly direction across the lands of the aforesaid Diedrick and plaintiff, and from thence into a large creek, known as Center «reek, which crosses the land of the said Diedrick and plaintiff, and which passed off in a northwesterly direction into Lake Erie; that along the aforesaid settle, sog, or low place, which crossed said ridge and conducted said water from said low, wet, swampy piece of land as aforesaid, said defendant dug a ditch some nine years ago, and in the year 1859 widened, deepened, and extended the same clear up through this low and wet piece, and also cut .several collateral ditches, which brought all the water from this low, wet piece of land into the main ditch, so that all the water that accumulated on this low, wet piece was carried down this ditch to within twenty or twenty-five rods of defendant’s north *310 line, where said ditch terminated, and the water was' discharged upon the surface of said defendant’s land, and left to seek its own natural flow and course over the surface, and that the water which, passed down said ditch did pass, in its natural flow and course,, over the surface in a northwesterly direction, across the lower end, of defendant’s land and on to the land of Mathias Diedrick, and. from thence on the land of the plaintiff.,
“ And much other evidence was offered in the case, whereupon* *the parties rested; and the court charged the jury, among' other things, that ‘if you find that the defendant’s land adjoining-the land of the plaintiff was wet, swampy land, upon the surface-of which water naturally accumulated, and that the water thus accumulating upon the lands of the defendant naturally flowed throughnatui-al channels, or by the natural flow of the water over the surface of defendant’s land, or by percolating through it, passed on the land of plaintiff, we hold and so instruct you, that for the purpose of improving his own farm, the defendant had the right to* improve the natural channels and water-courses upon his own land, conveying the water off in the same general direction it formerly passed off; and if no damage was done to the plaintiff thereby, he-might lawfully gather together in one channel the water usually passing off in several channels; and the fact.that some water would, thus pass off on the plaintiff’s land,' by reason of the improved-channels, that without the improvements would have evaporated on defendant's land, would not alter the case or make the defendant liable. The principle being this, that a man may lawfully use and improve his property without being liable for damages for availing himself of its natural advantages and position. But I think a. party can not safely go any further than above indicated. Has the defendant done more ? He says he has not; the plaintiff says-he has; you must decide the facts in the case. While each party may avail himself of the natural position and capabilities of his own land, he can not insist upon compelling the other to change places with him; and if you find in this case the facts to be, that there was a pond or basin upon defendant's land which had not an.' outlet, and in which the waters accumulating remained until evaporated, or that the waters of such pond or basin passed off through another channel, and in a different direction, and in either case the defendant, by the construction of his ditch, has conveyed on to the land of the plaintiff water which would either have remained on the defend *311 ant’s land until evaporated, or which would have, but for the ditch, passed off by a different channel or water-course, the defendant is liable ; for he has no right, by the construction of new channels, to throw on to> the plaintiff, water that would not have *gone there without. Unless all of the water which now passes through the new channels on to-the plaintiff's land would have passed through the natural channels-from the defendant’s land, on to that of the plaintiff, the plaintiff is entitled to recover. If you should find that the natural outlet of this bdsin is as the defendant claims, or if you should find that the water did pass out of it in a northwesterly direction, but that it immediately came back upon the lands of the defendant and passed upon the land of the plaintiff, at the point where it now does, or substantially so, you will find for the defendant; but if you find that after natural outlets had ceased to carry off the water, there still remained a basin covering several acres, on which water stood to the depth of one, two, or three inches, or more, which would not have passed upon the land of the plaintiff but for this improved channel, the plaintiff is-entitled to recover.”
To which charge the defendant, Butler, excepted.
The latter part of this charge to the jury, and appearing above in italics, is claimed to have been erroneous, and on that ground a reversal of the judgment is sought in this proceeding.
The question thus presented is a novel one in the courts of this state, and is both interesting and important; and the more so from the prospect that improved methods of culture, in connection with drainage, public and private, will make questions akin to this much-more frequent hereafter than they have been heretofore. And these considerations, too, afford somewhat of temptation to the court to indulge in what would be obiter dicta—the laying down of general rules for the government of the hypothetical cases likely to arise out of the drainage, with a view to the improvement in agriculture, which is now becoming frequent and extensive in our state. But such an attempt to forecast and anticipate the future, would, we think, be unsafe, and therefore unwise; and so we confine ourselves strictly to the decision of the question made by the record under review.
The principle seems to be established and indisputable, that where two parcels of land, belonging to different owners, lie adjacent to each other, and one parcel lies lower than the other, the lower one owes a servitude to the upper, to receive *the water which naturally runs from it, provided the industry of man has not *312 been used to create the servitude. Or, in other words more familiar to the students of the common law, the owner of the upper parcel of land has a natural easement in the lower parcel, to the extent of the natural flow of water from the upper parcel to and upon the lower. But to what extent, if any, the owner of the upper parcel may gather and concentrate, by artificial means, the waters which fall upon, or originate on his parcel, and send them upon the lower parcel; and how far a due regard to the great interests of agriculture and the policy of our legislation will authorize the owner of the upper parcel to go in facilitating, hastening, and to some extent temporarily increasing the flow of water from the upper to the lower-•estate, are questions not involved in the record under review before us, and which we do not assume to decide. We leave them to be decided as they may arise, with the help of lights to be developed in the meantime from adjudications elsewhere, and from the -modifications, if any such there shall be, of the legislative policy of the state.
The sole question made by that part of the charge to the jury which is complained- of, is this : Whether an owner of land having .upon it a marshy sink or basin of water, which basin, as to a considerable portion of the water which collects within it, has no natural outlet, may lawfully throw such water, by artificial drains, •upon the lands of an adjacent proprietor? We are clear that no such right exists. It would sanction the creation, by artificial means, of a servitude which nature has denied. The natural easement arises out of the relative altitudes of adjacent surfaces as nature made'them, and these altitudes may not he artificially changed to the damage of an adjacent proprietor. And it makes no differ•ence that, in the hypothetical case on which the charge of the court below complained of is based in times of high water a portion of the waters of the basin would overflow its rim, and find their way along a natural swale to and upon the lands of the plaintiff below; for, as to those waters which naturally could not surmount nor penetrate the rim of the basin, but were compelled to pass off by evaporation or remain where they were, the case is the •same as if the basin had no outlet whatever.
The subject generally will be found discussed in Washburn on Easements, 353 et seq.; in Kauffman v. Griesemer, 26 Penn. St. 407, and Martin v. Riddle, Id. 415 ; and Martin v. Jett, 12 Louisiana, 501. Judgment affirmed.
Scott, C. J., and Day, White, and Welch, JJ., concurred.